Scott A. Harford (SH-2300)
LYNCH DASKAL EMERY LLP
264 West 40th Street
New York, New York 10018
(212) 302-2400



Attorneys for *Plaintiffs Leo and Francine Fakler*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

LEO FAKLER and FRANCINE FAKLER,                    :          2006 - CV - 4730

                     Plaintiffs,               :          **AMENDED COMPLAINT**

          -against-                              :

C.B. FLEET HOLDING COMPANY,                        :
INCORPORATED, C.B. FLEET COMPANY,                  :
INC., CVS CORPORATION, J.C. PENNEY                 :
COMPANY, INC., ECKERD CORPORATION,                 :
and ECKERD STORE #5594,                            :
                                    :
                Defendants.              :

-------------------------------------------------------------X

      Plaintiffs Leo Fakler and Francine Fakler, through their attorneys, Lynch Daskal Emery

LLP, as and for their Amended Complaint against defendants, allege as follows:

### PARTIES

      1.     Plaintiff Leo Fakler ("plaintiff") is 73-years-old.  He resides at 22 Hofstra Court,

Plainview, New York.

      2.     Plaintiff Francine Fakler is plaintiff's wife ("wife") and resides with plaintiff at 22

Hofstra Court, Plainview, New York.

      3.     Defendant C.B. Fleet Company, Inc. is a closely-held corporation, incorporated in

the State of Virginia, with its corporate headquarters located in Lynchburg, Virginia.  C.B. Fleet

Company, Inc. is the ultimate parent of C.B. Fleet Holding Company, Incorporated.

4.    Defendant C.B. Fleet Holding Company, Incorporated is a closely-held corporation, incorporated in the State of Virginia, with its corporate headquarters located in Lynchburg, Virginia. (C. B. Fleet Company, Inc. and C.B. Fleet Holding Company, Incorporated are hereafter collectively referenced as "Fleet".)

5.    At all times relevant to this Verified Complaint, Fleet manufactured, promoted, distributed, and sold for profit an over-the-counter product known as Fleet Phospho-soda in different flavors and containing sodium phosphate. Fleet promoted, distributed, and sold Fleet Phospho-soda as a "laxative, for the relief of occasional constipation" and "purgative, for use as part of a bowel cleansing regimen in preparing for surgery, x-ray or endoscopic examination."

6.    At all times relevant to this Verified Complaint, Fleet manufactured, promoted, distributed, and sold for profit Fleet Phospho-soda through interstate commerce throughout the State of New York.

7.    Defendant CVS Corporation is a publicly traded company on the New York Stock Exchange that is incorporated in the State of Delaware, with its corporate headquarters located in Woonsocket, Rhode Island.

8.    Defendant J.C. Penny Company, Inc. ("J.C. Penney") is a publicly-traded company on the New York Stock Exchange that is incorporated in the State of Delaware, with its corporate headquarters located in Plano, Texas. J.C. Penney provides merchandise and services to consumers throughout the United States, including in the State of New York, through various department stores, catalogs, and the internet.

9.    Defendant Eckerd Corporation ("Eckerd") is incorporated in the State of Delaware, with its corporate headquarters located in Largo, Florida. Upon information and

2

belief, Eckerd is a wholly-owned subsidiary of CVS Corporation and/or J.C. Penney. Eckerd operates retail pharmacies in the State of New York.

10.    Upon information and belief, defendant Eckerd Store #5594 is a wholly owned subsidiary of Eckerd Corporation and operates a pharmacy retail store located at 391 South Oyster Bay, Plainview, New York 11803.

11.    Pursuant to an Order by the State of New York Litigation Coordination Panel, dated March 28, 2006, all actions for personal injury alleged to have occurred as a result of the use of Fleet Phospho-soda in the State of New York are coordinated before this Court under Section 202.69 of the Uniform Rules of the Trial Courts.

12.    An Administrative Order dated April 14, 2006, assigned all such actions for personal injury to Justice Marcy Friedman for purposes of coordination.

13.    All defendants conduct and transact business in the State of New York, have committed tortious acts within the state, and have otherwise performed acts within and/or without the state giving rise to injuries and losses within the state, which acts subject each defendant to the jurisdiction of the courts of this state.

## FACTS

14.    The use of Fleet Phospho-soda does not require a doctor's prescription.

15.    On or about September 20, 2005, Mr. Fakler purchased a 3.0 fluid ounce (90 mL) package of Fleet Phospho-soda ("the package") from the Eckerd pharmacy located at 391 South Oyster Bay, Plainview, New York 11803.

16.    Each defendant, having placed Fleet Phospho-soda purchased by Mr. Fakler in the stream of commerce, was under a duty of reasonable care to give adequate warning of any

3

dangers known to them or which in the use of reasonable care they should have known and
which a user of Fleet Phospho-soda ordinarily would not discover.

17.    The package of Fleet Phospho-soda purchased by Mr. Fakler contained no
product insert, and there were no warnings regarding the health risks of kidney damage, failure,
or disease, risk to the elderly, or any other risk of serious injury associated with the use of Fleet
Phospho-soda.  Similarly, the Physicians Desk Reference contained no warnings regarding the
health risks of kidney damage, failure, or disease, or any other risk of serious injury associated
with the indicated and instructed uses of Fleet Phospho-soda.

18.    At all relevant times, defendants knew or should have known that using Fleet
Phospho-soda could cause serious physical injury, particularly acute renal failure and chronic
kidney disease.

19.    Prior to September 20, 2005, Fleet had received several reports of kidney failure
following the use of Fleet Phospho-soda, but failed to advise either physicians or consumers of
the risk of kidney failure from the use of Fleet Phospho-soda as a bowel cleanser.

20.    Prior to September 20, 2005, Fleet had conducted studies which showed that two
1 oz. (30 mL) doses of Fleet Phospho-soda separated 10-12 hours provided adequate bowel
cleansing for colonoscopy while resulting in fewer adverse events than the regimen Fleet
provided (two 1.5 oz. (45 mL) doses of Fleet Phospho-soda separated by 10-12 hours) but failed
to warn either physicians or consumers of that.

21.    Prior to September 20, 2005, Fleet knew but did not warn physicians or
consumers that the standard dosing of Fleet Phospho-soda which Fleet recommended in
connection with bowel cleansing in preparation for colonoscopy posed greater risk of adverse

4

events, including serious injury, than an alternative dosing method, which Fleet refers to as the "Dilution Solution" method of dosing.

22.     The ingredients in Fleet Phospho-soda are absorbed into the blood stream.

23.     Use of Fleet Phospho-soda can cause soft tissue calcification, primarily in the kidneys, heart, blood vessels, cornea, lungs, and gastric mucosa.

24.     Use of Fleet Phospho-soda has been associated with acute renal failure.

25.     Use of Fleet Phospho-soda has been associated with chronic kidney disease.

26.     Use of Fleet Phospho-soda has been associated with acute phosphate nephropathy.

27.     Safer alternative bowel cleansers which are not absorbed into the blood stream are commercially available.

28.     Bowel cleansers that work with smaller amounts of dibasic and monobasic sodium phosphate are commercially available.

29.     Bowel cleanser kits which better control and ensure proper hydration are commercially available.

30.     The glomerular filtration rate in humans tends to decrease with age.

31.     Defendants, through their promoting, labeling and selling of Fleet Phospho-soda, falsely, deceptively and materially misrepresented to plaintiff that Fleet Phospho-soda was a safe product when, in fact, it was not.  For example, defendants expressly misrepresented to Mr. Fakler on the Fleet Phospho-soda packages that "[w]hen taken as directed," Fleet Phospho-soda's "laxative action is gentle, virtually free from the likelihood of gastrointestinal discomfort, or irritation, and is safe for the age groups indicated."  Mr. Fakler was in one of the "indicated" age groups at the time he used the Fleet Phospho-soda.

5

32.    Additionally, despite their knowledge of the unsafe and dangerous nature of Fleet Phospho-soda, defendants recklessly, negligently and knowingly failed to provide needed, accurate, and adequate information regarding the health hazards of Fleet Phospho-soda to those such as plaintiff who would reasonably and foreseeably use the product.  For example, defendants failed to advise Mr. Fakler of the proper amount of water or other liquids to drink after using Fleet Phospho-soda and otherwise failed to advise plaintiff of the health risks and hazards associated with the use of Fleet Phospho-soda.

33.    Defendants intended consumers, including Mr. Fakler, to rely on defendants' representations and misrepresentations regarding Fleet Phospho-soda and the dangers and health risks associated with the product.

34.    Defendants' representations and misrepresentations were negligently, recklessly or knowingly false and misleading as to Mr. Fakler, a person of advanced age, and were made with the intent of inducing plaintiff into purchasing and using Fleet Phospho-soda.

35.    Mr. Fakler believed and justifiably relied upon defendants' representations and misrepresentations and was thereby induced into purchasing and using Fleet Phospho-soda.

36.    Mr. Fakler used the package of Fleet Phospho-soda in accordance with and reliance on the instructions and representations on the package and in accordance with a doctor's recommendation on or about the evening of September 20, 2005, and the morning of September 21, 2005.  Mr. Fakler took two separate 1.5 mL doses of Fleet Phospho-soda as a bowel preparation for colonoscopy.

37.    Mr. Fakler used Fleet Phospho-soda for its intended or reasonably foreseeable purpose, i.e., as a bowel cleanser prior to surgery.

6

38.    Neither the Fleet Phospho-soda nor the package in which it was contained was reasonably safe in its design in that Fleet Phospho-soda was not reasonably safe for its intended or reasonably foreseeable use as a bowel cleanser and in that the package failed to warn of various dangers and health risks, among them the risk of kidney disease.

39.    On or about September 21, 2005, Mr. Fakler underwent a colonoscopy at the office of Dr. Arthur L. Talansky.  Following the colonoscopy, Mr. Fakler returned home.

40.    Shortly after undergoing the colonoscopy, Mr. Fakler began to experience fatigue, light headedness, and nausea.

41.    On or about October 6, 2005, Mr. Fakler sought treatment at North Shore Hospital where he underwent blood tests that revealed a rapid rise in his creatinine level to 3.6.  Mr. Fakler was then diagnosed as having renal failure and began treatment with a kidney specialist at Columbia Presbyterian Hospital.

42.    Before Mr. Fakler used Fleet Phospho-soda, he was a healthy man with a normal creatinine level.

43.    As a consequence of his use of Fleet Phospho-soda, Mr. Fakler suffers from anemia, has waves of nausea, and feels tired and weak.  Mr. Fakler has also been forced to inject himself with Aranesp syringes every two weeks as part of his continued treatment for his kidney and anemia conditions.

44.    Mr. Fakler has suffered economic losses, including lost income, as a result of the injuries caused by his use of Fleet Phospho-soda.

45.    Defendants knew of the dangers of Fleet Phospho-soda, including its propensity to cause kidney disease of the type sustained by Mr. Fakler, but through their negligent, reckless,

7

and fraudulent conduct concealed and failed to advise consumers, including Mr. Fakler, of the

dangers and health risks associated with Fleet Phospho-soda.

46.    The amount of damages sought by plaintiffs exceeds the jurisdictional limits of all

lower courts which would otherwise have jurisdiction.

## AS AND FOR A FIRST CAUSE OF ACTION
(Strict Liability – Design Defect/Failure to Warn)

47.    Plaintiffs repeat and reallege each and every allegation set forth above with the

same force and effect as if set forth fully herein.

48.    As set forth above, the Fleet Phospho-soda that Mr. Fakler used was unreasonably

dangerous and defective and not reasonably safe for use in its intended or reasonably foreseeable

purposes because it did not have a correct, adequate and complete warning issued in language

that was direct, unequivocal, and sufficiently forceful.

49.    It would have been feasible to design Fleet Phospho-soda in a way that would

have eliminated or substantially diminished the risk of kidney disease and other dangers and

health risks.

50.    Defendants knew or otherwise expected that Fleet Phospho-soda would reach the

ultimate user, including Mr. Fakler, without substantial change from, or alteration of, the

condition in which it was originally manufactured and sold.

51.    Defendants' sale of a defective product to Mr. Fakler was a substantial factor in

causing Mr. Fakler to suffer injuries and damages, including chronic kidney disease, lost income,

and a dramatic degradation in the quality of his life.

52.    By reason of the foregoing, defendants are strictly liable to plaintiffs.

8

53.     Plaintiff is entitled to punitive damages because defendants' conduct was wanton, grossly reckless, and/or in conscious disregard of plaintiff's rights and the rights of other users of Fleet Phospho-soda.

### AS AND FOR A SECOND CAUSE OF ACTION
(Negligence – Failure to Warn)

54.     Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

55.     Fleet Phospho-soda was reasonably certain to be dangerous when used in a reasonably foreseeable manner, including the manner that was directed on the package.

56.     Defendants breached their duty of reasonable care owed to Mr. Fakler as set forth above in failing to give adequate warning of the dangers known to them or which in the use of reasonable care they should have known and which a user of Fleet Phospho-soda ordinarily would not discover.

57.     Defendants were otherwise negligent.

58.     As a direct and proximate consequence of defendants' acts, omissions, recklessness, negligence, and breach of duties, Mr. Fakler suffered injuries and damages, including chronic kidney disease, lost income, and a dramatic degradation in the quality of his life.

59.     Plaintiff is entitled to punitive damages because defendants' failure to warn was wanton, grossly reckless, and/or in conscious disregard of plaintiff's rights and the rights of other users of Fleet Phospho-soda.

## AS AND FOR A THIRD CAUSE OF ACTION
(Negligent Misrepresentation)

60.     Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

61.     Defendants' material misrepresentations and omissions to Mr. Fakler, as set forth more fully above, caused defendants to breach their duty of reasonable care owed to plaintiffs to give accurate and adequate information regarding Fleet Phospho-soda and not to misrepresent or conceal any dangers regarding Fleet Phospho-soda known to them or which in the use of reasonable care they should have known.

62.     As a direct and proximate result of defendants' misrepresentations, omissions, recklessness, negligence, and breach of duties, Mr. Fakler suffered injuries and damages, including chronic kidney disease, lost income, and a dramatic degradation in the quality of his life.

63.     Plaintiff is entitled to punitive damages because defendants' acts and omissions were wanton, grossly reckless, and/or in conscious disregard of plaintiff's rights and the rights of other users of Fleet Phospho-soda.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Negligence – Design Defect)

64.     Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

65.     As set forth above, Fleet Phospho-soda was defectively designed in that it was reasonably certain to be dangerous when used in a reasonably foreseeable manner, including the manner that was directed on the package.

10

66.     It would have been feasible to design Fleet Phospho-soda in a way that would have eliminated or substantially diminished the risk of kidney disease and other dangers and health risks.

67.     Defendants breached their duty of reasonable care owed to Mr. Fakler to design Fleet Phospho-soda in a reasonably safe manner and were otherwise negligent.

68.     As a direct and proximate consequence of defendants' acts, omissions, recklessness, negligence, and breach of duties, Mr. Fakler suffered injuries and damages, including chronic kidney disease, lost income, and a dramatic degradation in the quality of his life.

69.     Plaintiff is entitled to punitive damages because defendants' failure to exercise reasonable care in designing Fleet Phospho-soda was wanton, grossly reckless, and/or in conscious disregard of plaintiff's rights and the rights of other users of Fleet Phospho-soda.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Deceptive Acts or Practices/Consumer Fraud)

70.     Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

71.     As set forth above, defendants deceptively and knowingly failed to provide needed, accurate, and adequate warnings and information regarding the health risks and hazards of Fleet Phospho-soda to elderly consumers, such as Mr. Fakler, who would reasonably and foreseeably use the product and would be misled by such deceptive acts.

72.     As a direct and proximate result of defendants' intentional and deceptive acts and misrepresentations and omissions, as set forth above, plaintiff suffered injuries and damages, including chronic kidney disease, lost income, and a dramatic degradation in the quality of his life.

11

73.    The foregoing acts and omissions by defendants constituted deceptive acts or practices in violation of General Business Law § 349, entitling plaintiff to recover attorneys' fees and actual and statutory damages, including damages as provided in General Business Law § 349(h).

### AS AND FOR A SIXTH CAUSE OF ACTION
(False Advertising)

74.    Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

75.    As set forth above, defendants, through their promoting, labeling and selling of Fleet Phospho-soda, falsely, deceptively and materially misrepresented to Mr. Fakler that Fleet Phospho-soda was a safe product when, in fact, it was not.

76.    Despite their knowledge of the unsafe and dangerous nature of Fleet Phospho-soda, defendants deceptively and knowingly failed to provide needed, accurate and adequate warnings and information regarding the health hazards of Fleet Phospho-soda to those such as Mr. Fakler who would reasonably and foreseeably use the product.

77.    As a direct and proximate result of defendants' knowingly deceptive acts, false advertising and labeling, misrepresentations and omissions, Mr. Fakler suffered injuries and damages, including chronic kidney disease, lost income, and a dramatic degradation in the quality of his life.

78.    The foregoing acts and omissions by defendants constituted false advertising in violation of General Business Law § 350, entitling plaintiff to recover attorneys' fees and actual and statutory damages, including damages as provided in General Business Law § 350-e(3).

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Breach of Express Warranties)

79.    Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

80.    Through advertising, labeling on the packages, and in other ways, defendants made certain express warranties about the safety and uses of Fleet Phospho-soda in order to induce the public and plaintiff to purchase and use Fleet Phospho-soda, such as warranties set forth in paragraph 31 above.

81.    As set forth above, defendants breached their express warranties because, among other things, Fleet Phospho-soda was not safe for the age groups indicated.

82.    Through the use of reasonable care, plaintiff could neither have discovered defendants' breach nor realized the danger of using Fleet Phospho-soda.

83.    As a direct and proximate result of defendants' breach of their express warranties, plaintiff suffered injuries and damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
(Breach of Implied Warranty)

84.    Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

85.    The law implies a warranty by manufacturers and companies in the chain of distribution who place a product on the market that it is merchantable and reasonably fit for the ordinary purposes for which such product is used.

86.    As set forth above, Fleet Phospho-soda was not merchantable and reasonably fit to be used for its ordinary purposes, and, accordingly, defendants breached the implied warranties owed to Mr. Fakler.

13

87.     As a direct and proximate result of defendants' breach of the implied warranties, plaintiff suffered injuries and damages.

## AS AND FOR A NINTH CAUSE OF ACTION
(Fraud & Deceit)

88.     Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

89.     Defendants fraudulently represented to Mr. Fakler and to the public that Fleet Phospho-soda was a safe product when, in fact, it was not.

90.     Defendants fraudulently concealed and failed to advise Mr. Fakler of needed information regarding the use of Fleet Phospho-soda and of the health risks and hazards associated with Fleet Phospho-soda.

91.     Defendants' material representations and misrepresentations were knowingly or recklessly false and were made with the intent of inducing the public and Mr. Fakler, a person of advanced age, into purchasing and using Fleet Phospho-soda.

92.     Mr. Fakler believed and justifiably relied upon defendants' fraudulent representations and misrepresentations and was thereby induced into purchasing and using Fleet Phospho-soda.

93.     As a direct and proximate result of defendants' fraudulent representations and misrepresentations, as set forth above, Mr. Fakler suffered injuries and damages, including chronic kidney disease, lost income, and a dramatic degradation in the quality of his life.

94.     Even after Mr. Fakler purchased and used Fleet Phospho-soda, defendants continued to fraudulently conceal the dangers and health risks of Fleet Phospho-soda thereby inducing consumers and Mr. Fakler into believing the product was safe when, in fact, it was not.

14

95.    Plaintiff is entitled to punitive damages because defendants' conduct was wanton, grossly reckless, and/or in conscious disregard of plaintiff's rights and the rights of other users of Fleet Phospho-soda.

## AS AND FOR A TENTH CAUSE OF ACTION
(Loss of Consortium)

96.    Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

97.    At all times relevant to this Verified Complaint, Mr. Fakler's wife suffered damages as the result of the loss of plaintiff's services, society, and consortium.

98.    As a direct and proximate result of defendants' conduct and the defective, unsafe, and unreasonably dangerous condition of Fleet Phospho-soda, Mr. Fakler's wife has been deprived of the services, society, and consortium of plaintiff.

WHEREFORE, plaintiffs Leo Fakler and Francine Fakler demand judgment for compensatory, statutory and punitive damages, in amounts to be proved at trial, and that they be awarded reasonable attorneys' fees, costs, and such other and further relief as may be deemed just and proper.

Dated: New York, New York
        December 18, 2007

LYNCH DASKAL EMERY LLP
Attorneys for *Plaintiffs Leo and Francine Fakler*


By: _Scott A. Harford_
        Scott A. Harford (SH-2300)
        264 West 40th Street
        New York, New York 10018
        (212) 302-2400

15

Scott A. Harford (SH-2300)
LYNCH DASKAL EMERY LLP
264 West 40th Street
New York, New York 10018
(212) 302-2400

Attorneys for *Plaintiffs Leo and Francine Fakler*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LEO FAKLER and FRANCINE FAKLER,          :
                                         :     2006 - CV - 4730
                    Plaintiffs,          :
                                         :     **AFFIDAVIT OF SERVCE**
          -against-                      :
                                         :
C.B. FLEET HOLDING COMPANY,              :
INCORPORATED, C.B. FLEET COMPANY,        :
INC., CVS CORPORATION, J.C. PENNEY       :
COMPANY, INC., ECKERD CORPORATION,       :
and ECKERD STORE #5594,                  :
                                         :
                    Defendants.          :
------------------------------------------------------------X

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

        NICOLE WERTALIK, being duly sworn, deposes and says:

        1.  I am not a party to this action, am over 18 years of age, and I am a paralegal at the offices of Lynch Daskal Emery LLP.  I reside at 42 PINE ST. YONKERS, NEW YORK, NY 10701.

        2.  On the 18th day of December, 2007, I served by first class mail a copy of the within **AMENDED COMPLAINT** by depositing true and correct copies of the same, enclosed in post-paid, properly addressed envelopes, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York addressed as follows:

Denise Holzka, Esq.
Heidell, Pittoni, Murphy & Bach, LLP
99 Park Avenue
NY, NY 10016

                                         *Nicole Wertalik*
                                         _____
                                         NICOLE WERTALIK

Sworn to before me this
18th day of December, 2007

*Scott A. Harford*
_____
Notary Public

                    SCOTT A. HARFORD
                 Notary Public, State of New York
                    No. 02HA6104281
                 Qualified in New York County
               Commission Expires January 20, 20O8